SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of United States Customs & Border Protection ("CBP") of the Department of Homeland Security (collectively the "United States"), Interport Company, Inc. ("Interport") (collectively, the "Parties"), through their authorized representatives.

RECITALS

A. Interport is an exporting and logistics business. It is registered in Illinois and Florida but conducts business activities shipping goods and cars from, among other locations, Houston, Texas, and Freeport, Texas. Interport's principal and registered agent is Tony Alvaro.

B. Pursuant to CBP regulations, Interport is required to submit Electronic Export Information ("EEI") filings with the Automated Export System ("AES") describing the goods that it exports internationally. Among other things, exporters like Interport are required to comply with export control regulations concerning the shipping of firearms and ammunition. Moreover, they are required to correctly input VIN numbers for any vehicles that are being exported.

C. The United States contends that, from January 1, 2020 to October 31, 2021, Interport failed to enter accurate EEI on various shipments. Specifically, Interport attempted to export shipments that (1) contained firearms and ammunition; and (2) contained vehicles whose VINs were improperly entered into the AES. As a result, CBP assessed penalties for its conduct as identified in the following:

- FPF 2020530130011401;

- FPF 2020530130014301;
- FPF 2020530130018301;
- FPF 2020530130020601;
- FPF 2021530130001201;
- FPF 2021530130001801;
- FPF 2022530130001401;
- FPF 2022530130001601;
- FPF 2022530130002701;
- FPF 2022530130002801; and
- FPF 2022530130004201.

The conduct described in this Paragraph C is referred to below as the "Covered Conduct."

D. This Settlement Agreement is neither an admission of liability by Interport, nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1) Interport shall pay to the United States Fifty Thousand Dollars ($50,000) (the "Settlement Amount") pursuant to the following schedule:

   a. The first payment, which shall be $25,000, is due on August 31, 2023;

   b. The second payment, which shall be $2,500, is due September 30, 2023;

2

      c. The third payment, which shall be $2,500, is due October 31, 2023;

      d. The fourth payment, which shall be $2,500, is due November 30, 2023;

      e. The fifth payment, which shall be $2,500, is due December 31, 2023;

      f. The sixth payment, which shall be $2,500, is due January 30, 2024;

      g. The seventh payment, which shall be $2,500, is due February 28, 2024;

      h. The eighth payment, which shall be $2,500, is due March 31, 2024;

      i. The ninth payment, which shall be $2,500, is due April 30, 2024;

      j. The tenth payment, which shall be $2,500, is due May 31, 2024.

      k. The eleventh payment, which shall be $2,500, is due June 30, 2024.

Payments shall be made by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Southern District of Texas.

    2)    Subject to the exceptions in Paragraph 3 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases Interport from any civil or administrative monetary claim the United States has for the Covered Conduct under 13 U.S.C. § 301(a) and 13 U.S.C. § 305(b).

    3)    In consideration for the releases given in Paragraph 2 of this Agreement, and as a condition of Interport's continued registration as an exporter, Interport agrees that it will make best efforts to implement enhanced screening measures to ensure that the goods it ships are accurately entered via the AES. Interport and CBP representatives of the CBP Export Management at the Area Port of Houston/Galveston will discuss the potential

compliance measures needed by Interport. Such discussions will be on a quarterly basis until such time that CBP determines that the Covered Conduct is resolved.

4) Notwithstanding the releases given in Paragraph 2 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Except as explicitly stated in the Agreement, any administrative liability or enforcement right, or any administrative remedy, including mandatory and permissible exclusion from Federal health care programs;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement;

f. Any liability of individuals.

5) Interport waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

6) Interport fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that it has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents,

employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

7) Interport agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Interport shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Interport further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Civil Action that it has undertaken, or that has been performed by another on its behalf.

8) Except as expressly provided herein, this Agreement is intended to be for the benefit of the Parties only.

9) Each Party shall bear its own legal and other costs incurred in connection with this matter, including the investigation of the matter and preparation and performance of this Agreement.

10) Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

11) This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Texas. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this

Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

12) This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

13) The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

14) This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

15) This Agreement is binding on Interport's successors, transferees, heirs, and assigns.

16) All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

17) This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Electronic signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 7/26/2023  BY: _____
Brad R. Gray
Assistant United States Attorney
Southern District of Texas

6

INTERPORT COMPANY, INC.

DATED: 07/26/2023 BY: _____
Tony Alvaro
Principal & Owner
Interport Company, Inc.